Call the next nighter, Giles vs Rick Yes, may it please the court, my name is Katherine Ganey of Steptoe and Johnson on behalf of appellant Wardell Giles. I request three minutes of rebuttal time. We are here today because a different panel of this court denied appellee's motion for summary affirmance and appointed counsel for Mr. Giles. The central issue in this case is whether the defendants in the shower incident used excessive force when they kicked and beat Mr. Giles after he was already subdued. Now this is a question that the district court failed to analyze both in its summary judgment opinion and in its bench trial opinion. The district court never considered this central issue in the case. It held that the officers were permitted to use force against Mr. Giles in its summary judgment opinion because Mr. Giles pled guilty to misdemeanor assault for hitting officer blades. Yet the district court failed to view the facts in favor of Mr. Giles at the summary judgment stage. It failed to accept his allegations as true. In his allegations, he alleged that the officers had him subdued and yet they continued to use force against him by kicking him and beating him. These allegations, if accepted as true, constitute a constitutional violation under the 8th Amendment as this court has previously found in the Smith case and in the Brooks case. Mr. Giles was a pretty disruptive, unresponsive prisoner. And he admitted striking one of the officers and was trying to get him to follow certain procedures. Isn't that enough for the other officers to step in and assist in subduing Mr. Giles? Certainly it was appropriate for the other officers to assist in subduing Mr. Giles. The question is, what amount of force was proper? Yes. Why wasn't it reasonable? Right. Was it reasonable? And was there a point where the force used became unreasonable because it continued after the officers had subdued Mr. Giles? Well, in that context, why wasn't the plea of guilty, that is, Mr. Giles's admission that he struck an officer involved in connection with this incident sufficient for the district court to grant immunity? Well, as this court has previously held in the Bender case, this court reversed summary judgment when the plaintiff pled guilty to aggravated assault for kicking an officer after the arrestee was already handcuffed. The district court in that case had found that the force was reasonable after the plaintiff had pled guilty for aggravated assault. Yet this court reversed and recognized that under summary judgment standard, the courts were viewed to view the facts in the plaintiff's favor, and in doing so, the allegations that that plaintiff had not provoked the officer meant that they had constituted, their allegations were sufficient for alleging a constitutional violation, as were Mr. Giles's allegations here. In his pro se summary judgment opposition, he alleged that he was not resisting the officers at the point where he was lying naked on the floor and Officer Blades was sitting on his back, and yet the other officers continued to kick and hit him in his side. And that is the point where Mr. Giles is alleging a constitutional violation, and qualified immunity is improper, as that right was clearly established at the time of the incident, which was in 2001. By that time, the Brooks case had already happened, and the 11th Circuit had already decided it was too much. Your request would be that we vacate the grant of judgment on behalf of three officers? The three officers, yes. They are Steele, Campbell, and Cassasi? Yes, that's correct. And so you would want us to send this case back to the District Court? That's correct. And what would the opinion that we write say to the District Court? What did the District Court do wrong? The District Court failed to accept the allegations of Mr. Giles as true on the summary judgment standard, and failed to draw permissible inferences in Mr. Giles's favor. And the fact that Mr. Giles pled guilty to misdemeanor assault didn't negate the rest of the allegations that after he was subdued, the officers continued to use force. And that force, one permissible inference from this record on the summary judgment stage, is that that force was used in retaliation for the fact that Mr. Giles had hit Officer Blades. The other officers that came to the scene knew that that had happened, and that they were retaliating against Mr. Blades in their continued use of force. But I mean, isn't immunity, I mean, the Whitley case tells us and points out rightfully, you know, officers are forced to make split-second decisions in situations where they have to bring, you know, order back to the prison. Isn't that sort of what happened here? I mean, was it really improper to grant immunity? It was improper to grant immunity when there were material disputes of fact in the record. And from the plaintiff's allegations, if you accept them as true, he was subdued at the point when the officers continued to kick and hit him. And at that point, further use of force was improper under the Eighth Amendment and under the Whitley standard. I see. So, well, there was no live hearing, I guess, with respect to those allegations, right? It was just done on the papers as a regular summary judgment motion? That's correct. And Mr. Giles was not represented by counsel at that point. He was pro se. His counsel was appointed after the summary judgment was denied with respect to the other defendants. Did he put in any? I understand about his allegations, but do you have to put in more than allegations? What did he rely upon as a pro se? Well, he... For the summary judgment motion. For the summary judgment motion, he filed a pro se opposition, which he hand wrote out. But there was other evidence in the record that was submitted by the defendants, including his deposition transcript and the officer's incident reports. In particular, Officer Campbell's incident report indicated that he did knee Mr. Giles in the side. So, there was also objective evidence in the record substantiating Mr. Giles' allegations, in addition to the fact of his physical injuries, which were also in the record at the summary judgment stage, as he suffered a broken rib and a punctured lung. So, you think he should have gone to trial along with, is it, Officer Blades? That's correct. And one thing I'd like to comment about the bench trial is that the district court evens still never decided the central issue in this case, and that's whether Mr. Giles was subdued when the officers continued to kick and hit him. The district court's decision at the bench trial commented upon Mr. Blades' calf stunning Mr. Giles and commented upon Blades sitting on Mr. Giles' back, but then never made any findings with respect to whether the other use of force was excessive, which went to the heart of Mr. Giles' allegations. Do you want to comment on the incident in the infirmary? I would like to comment on the incident in the infirmary, just to quickly highlight that it illustrates the district court, the flaws in the district court's Whitley analysis, and that the district court conducted the Whitley analysis completely differently between the shower incident and the infirmary incident. Had the officers done what they were supposed to do? In other words, they took him to the infirmary and left him in the infirmary for further medical care? He was in the infirmary in a secured cell at that point, and later in that evening, he woke up around 2 a.m., and at this point it was the next morning, the 28th, in pain, and that was when he requested medical attention. All right, but that was from an officer. Yes. It is my understanding that from the security cell in the infirmary that he doesn't have direct access to physicians, that he has to request the guards to basically relay his medical attention requests to a physician. I'm sorry. Go ahead. Well, there's an issue about an allegation, or at least a statement of the law, that non-medical personnel can't be held liable for indifference where a prisoner is under the care of medical personnel. Isn't that this case, and I mean, I think there are two cases, at least from the circuit, that stand for that proposition. What is your response to that? Well, Mr. Giles alleged, well, testified at trial on the deliberate indifference point that he requested not just medication, but that he also requested medical attention, and that that request was never relayed to the medical staff, and that the guards deliberately chose not to relay that request. Now, the district court's decision on this is inconsistent. In one of its findings of fact, it recognized Giles' testimony that he requested medical attention, said that this was a serious situation, and that he was in pain, yet in its conclusions of law, it didn't resolve the dispute because the district court concluded, as a matter of law, that there was no evidence in the record that he had ever requested medical attention. So, in this respect, I'm afraid that the district court's decision is inconsistent on its face, and it's very difficult to ascertain whether the district court found that Mr. Giles' testimony was not credible, or whether it actually had ignored that testimony in its conclusions of law. And this is the sort of subordinate finding of fact that district courts must make in support of its ultimate conclusions to permit meaningful appellate review. If there are no further questions, I'd like to reserve the balance of my time for rebuttal. All right. You have about two minutes. Ms. Hodes? Yes. Good afternoon. My name is Judy Hodes, and I represent the appellees. The important legal principle to remember here is that it is the officer's perspective on the incident that is legally relevant, not the point of view of the inmate. We don't dispute that the point of view of the inmate was that he was subdued. But the facts of his own testimony are that he was shaking his head no and not releasing his arms when they were telling him repeatedly to release his hands to be cuffed. From the point of view of the officers, this was an inmate who had been resistant from the beginning, who had been assaultive, and who is now being resistant to being cuffed. Once he was cuffed, all of the evidence is that the use of force ended as soon as he was cuffed. He doesn't dispute that. If you don't view the events from the point of view of the officers, you undermine the ability of the officers to maintain discipline and safety in the prison. Even looking at things from the point of view of the officers, how would that justify a fractured rib and a punctured lung? Well, the fractured rib, I can't say for sure, but I wonder if a 300-pound officer sitting on him might have fractured his rib. We don't know what actually caused the fractured rib. You know, the reason I ask the question is because I did not see that the district court accounted for the injuries to Giles in the context of this altercation. So I thought maybe you could shed some light on what happened. Well, we know that he was sat on by a 300-pound guard and that he was kneed in the side by one of the officers. That's undisputed. I know that we take things, I don't know, you said that we have to look at things from the perspective of the officer, but we also have to look at the facts in a light favorable to the party making the complaint. Don't we look at the facts as true as presented by Giles? Well, Your Honor, that's what I'm doing. Giles said that he was shaking his head no and not releasing his arms when the officers told them to release his arms in order to be handcuffed. And if we don't look at the incident from the point of view of the officers, then we put the officers in the position in a tense, rapidly moving situation of having to think, well, what might this prisoner be thinking? Gee, maybe he's trying to move his arms and I'm not letting him. I guess I should let him move his arms. I should get off of his back and see what happens. I mean, that's, to me, that doesn't seem like a reasonable scenario for controlling a prisoner who's been assaultive. Can you look at the ultimate injuries as in analyzing whether the force used was reasonable? Yes, Your Honor. I also, in relating to the ultimate injuries, I do want to point out that there is no evidence that his punctured lung was caused at the time of the shower incident. The evidence is that the nurse who examined him immediately after the shower incident found no evidence of a punctured lung. And we do know that in the infirmary incident, he was physically agitated, banging and shaking the door. I'm not a medical expert, but it seems to me that it's conceivable that since he did end up with a punctured lung and he had a broken rib, that the broken rib occurred sometime after he was put in the infirmary. I'm sorry, the punctured lung. The district court granted immunity to Officer Steele and Officer Campbell and Officer Cassasi for the shower incident. Right. Do we know from the record why the district court granted immunity to Officer Steele? We know that the evidence is that the plaintiff did not know that Officer Steele had done anything to him. He was unable to testify that Officer Steele had done anything. Is that what the district court concluded? That was not in the district court's opinion. It's in the record. Do we know why Campbell was granted immunity? The district court lumped all of the three of them together and said that reasonable officers could disagree as to whether their conduct violated constitutional rights. Well, what are we going to do with Grant v. City of Pittsburgh, which says that where this court emphasized that the district court should analyze the specific conduct of each defendant who claims immunity? Now, that would suggest that you can't lump everyone together and say I'm giving you all immunity. That's like waving a wand. Do you think that under these circumstances the district court made a mistake? Your Honor, I think in these circumstances there was almost no evidence other than the plaintiff's vague charges that we admit that those three officers were present and assisting in subduing him. And he says that he was hit and kicked. I don't doubt for a moment that this was a very difficult situation, especially for the officers who were trying to subdue someone that they perceived was very unruly and disruptive. But our jurisprudence says that if you're going to grant somebody immunity, you have to specify what the grounds are for each individual. Isn't that what our jurisprudence says? I agree with that, Your Honor. I think that in this particular case there was no evidence from the plaintiff as to what each individual officer had done. Insufficient evidence. From the plaintiff who has the burden. Okay. As to the... Just a minute, please. Yes, Your Honor. Where does the burden come under these facts? Where does the burden come on Mr. Giles? Your Honor, I believe the plaintiff has the burden... He has just been pushed around, kicked around, and a lot of arounds. And other than the question that deals with the question of... What was the... Qualifying immunity. Other than that question of qualified immunity, you have this situation that the injuries... He was injured and he did not have the burden to know that he was injured. The other question of qualified immunity touches on both the conduct of the officers and the conduct of Giles. Would you like to comment on that? Your Honor, I'm sorry. I'm not sure I understand the question. I thought the question had to do with the burden. The burden of putting some evidence forth initially is on the plaintiff. Even though the standard for summary judgment is that you view the facts of record in the light most favorable to the non-moving party. But the non-moving party... And in the case of a pro se inmate, he can rely on the allegations of his complaint rather than putting in affidavits and so forth because that may be beyond his competence. But in this case, we have the deposition of Mr. Giles and he hasn't put in any evidence from which a conclusion could be made that any specific officer of the three did any specific thing. His only... Well, I beg to differ with you. I mean, he could just submit a hospital report or a medical report, which is evidence that he was assaulted. Not that he was assaulted without reason, but he was assaulted. And he explained how that came about in the shower room incident and people and some of the officers sat on him and he was kicked and et cetera, et cetera, et cetera. That was the evidence he presented. Right, but I... The question is whether the force used by the officers was reasonable under the circumstance. All right, I'm sorry. I was answering a previous question. The force... In order to judge whether the force used was reasonable, we have to look at what the officers perceived. And the officers perceived that he was continuing to resist until they were able to cuff him and then the force stopped. So as soon as he was in fact subdued by being cuffed, the force ceased. There was not a gratuitous, malicious, sadistic use of force. The cases that are cited by Mr. Giles in his briefs all involve either a plaintiff who was not resisting or a plaintiff who was already restrained, physically restrained, and yet force was applied. I can tell you the problem that I perceive, Ms. Hodes, is not what Mr. Giles said. It's not what the officers said. It's that the district court didn't lay out the reasons for the grant of immunity to any of these three officers. It apparently simply granted immunity on the basis of Giles's plea of guilty. He pled guilty, or no contest, with regard to blades. And the district court said, on the basis of that, I grant these officers immunity. And we can't tell from the record why Officer Steele or Campbell or Cassassas should have been granted immunity, or at least I can't tell. Maybe you can tell me. I believe that this court looks at the grant of immunity de novo, and the evidence from the plaintiff, from Mr. Giles, is that while Officer Blades was on his back and the other officers were trying to, were telling him to release his arms to be cuffed, he was shaking his head no, and that's his phrase. I was shaking my head no, and he was not releasing his arms. Now, from his point of view, he was saying, no, I can't breathe. But from the officer's point of view, he was saying no. And from his point of view, he couldn't release his arms. But from the officer's point of view, his arms weren't being released, despite their repeated orders to do so. So you're saying, as a matter of record, it may not be what the holdings were exactly, but I suppose your argument is that that can be used to support the judge's opinion. Correct, Your Honor. That this is a de novo review, and therefore you can consider the entire record that was available on the issue. Well, we can always consider evidence favorable to the verdict, right? No matter what. Right. Do you want to talk about the shower incident? The shower? The shower incident. I'm sorry, the infirmary incident. Yes, Your Honor. The infirmary incident is troublesome because the claim of deliberate indifference depends upon, first of all, depends upon the subjective view of the officer involved. And there is nothing, there's an absence in the record of any indication that the officers involved had deliberate indifference to his plight. I thought you were going to say the officers don't have the responsibility of providing medical care. And the officers do. They are guards in a prison. Correct. That they did, in fact, Officer Akenbrack did, in fact, go and tell the nerves that this prisoner is demanding medication. One second. You want to check the microphone? Judge Officer, can you hear us? Yeah. Okay, there we go. Okay. See what I'm looking at? The screen says microphone off at other side. That's my grandfather's phone ringing in the back there. Grandfather's phone. Tell us. Okay, Ms. Huggins. First of all, Mr. Giles didn't appear to be seriously injured. He was screaming and shaking the door. There was no objective indication that he was seriously injured. And the guards didn't know why he was. Because these are not the same guards who were involved in the shower incident. These guards didn't know why he was in the infirmary. And they see him physically active and agitated. He wasn't lying on the floor turning blue, and they just ignored him. They went and asked the nurse. He wants pain medication. And the nurse said, there's no order. But what he said, he suffered a broken rib and punctured lung. After guards cap stunned, pepper spray him for belligerent behavior in the prison shower. And wrestled him to the floor. Correct. But those guards, the guards who were involved in the shower incident were not involved in the infirmary incident. The infirmary guards didn't know what had happened to Mr. Giles. They didn't know why he was in the infirmary. No one told them. No one had any reason to tell them. They are not medical professionals. They're just there to maintain order in the infirmary. But didn't they have a responsibility, at least, to find out about a broken rib and a punctured lung of an inmate? But he was screaming, yelling, and shaking his door. He didn't appear to be injured. If he had been lying on his cot and moaning, that might be a different situation. Why was he cap stunned? I'm sorry, in the infirmary. Yes. He was cap stunned in the infirmary because it was two o'clock in the morning. He had been told there was no order for him to have medication. And he continued to yell and scream and shake the cell door. And he had been ordered to go sit down or lie down on his cot, on his bed. And the guards have the right, in maintaining order and discipline in the prison, to expect compliance with their reasonable orders and lawful orders. I have nothing further. Thank you. Ms. Hodes, thank you. Ms. Ganey. You have five minutes, if you need it. Yes, thank you. Just to go quickly to the first point that Ms. Hodes raised, whether Mr. Giles was actually subdued. And his testimony, both in his deposition and at trial, goes to this point. At trial, for example, he said, the officer there, he slammed my head while holding my head down, also had a knee in this part of my neck. There was another officer on this side of me to my left, slamming me in my ribs. The other officer I felt over on this side of me was kicking me. And that's on page 256 of the joint appendix. And that was while Mr. Blades was sitting on his back. And at the time of the incident, Mr. Blades weighed almost 300 pounds. So there definitely was a dispute of fact in the record as to whether Mr. Giles was subdued when they were continuing to exert force upon him, which made summary judgment improper under a qualified immunity analysis. Were you deciding to trial transcript? Oh, I'm sorry. That was trial transcript. He testified in the same way at his deposition. And the deposition testimony is on page JA89. At the deposition, he testified that he was lying face down on the floor that Blades was sitting on his back and holding his legs, and that another officer had his knee on his neck. So that testimony was the same from Mr. Giles, both in this deposition and at trial. And that sort of dispute of fact made summary judgment on qualified immunity basis improper. And the Bender case is another example of this. There was a similar dispute of fact whether the plaintiff was resisting in that case, and he was an arrestee. In that case, the court refused to grant summary judgment. Appellee has mentioned the issue of causation and what actually caused Mr. Giles' rib to become broken. I just wanted to point out quickly that this argument was raised for the first time in a footnote to Appellee's brief in the statement of facts section, and it wasn't presented below. The evidence presented below was Mr. Giles' testimony that he sustained the injury when the officers kicked him in the rib. And he reported that to the nurse who examined him immediately after the shower incident, that I heard my rib snap. I heard it break. And the district court made no findings to the contrary, and there was no evidence to the contrary on the issue of causation. If the court has any further questions, I'd be happy to answer them otherwise. Thank you. Ms. Gainey, you're from Washington, D.C.? Correct. You came up for this case? That's correct. And it's a pro bono case? That's correct. The court wants to thank you for the work that you've done. Your service is very much appreciated. Thank you. Thank you. Thank you both. We'll take the case under advisement.